## PHILLIPS *v.* O'NEAL.

1. Where each of two coterminous proprietors recognizes the ownership of the other, and that the tract of each is bounded by that of the other, the ascertainment of the true line between them fixes the extent of their respective tracts.
2. If one by mistake purchases a strip of land from the other which really belongs to himself, though he acquire actual possession by reason of his purchase, he is not bound to surrender the posses-

sion in order to avoid paying the purchase money, if the transaction was by mutual mistake, or if it was by mistake of the purchaser and fraud on the part of the vendor.

3. The rule that transactions in the sale and purchase of land which were evidenced by writing are not to be proved by parol without first accounting for the absence of the writing, applies in this case.

4. The relevancy of possession, etc., of another tract by a third person is not apparent. There was no error in denying a new trial on any of the grounds set forth in the motion.

October 19, 1891.

Boundaries. Mistake. Fraud. Title. Evidence. Before Judge VAN EPPS. City court of Atlanta. December term, 1890.

Reported in the decision.

BROYLES & SONS, for plaintiff.

SIMMONS & CORRIGAN, for defendant.

BLECKLEY, Chief Justice.

This case has been here twice before. *O'Neal* v. *Phillips*, 83 *Ga.* 556; *Phillips* v. *O'Neal*, 85 *Ga.* 142. On the first occasion it was held that, if the pleas of O'Neal were found to be true, the verdict should be in his favor. At the trial which took place afterwards the verdict was in his favor, and this was a finding that the pleas were true. But the court having admitted some illegal evidence that may have influenced the jury in their opinion as to where the true boundary which originally divided the premises of the respective parties was located, a new trial was granted, not for the purpose of reopening the whole controversy, but for the purpose of ascertaining where the true boundary was. This court thought that the true issue remaining for trial was: "Where is the north boundary of the line of Phillips' land? Did Phillips' land, when she sold to O'Neal, extend north of Pine street? If it did, she is entitled to recover on the notes sued on; if it did not, she is not entitled to recover, for she only sold

her interest in the land lying north of Pine street to O'Neal's land. If there was any of her land lying north of Pine street, then O'Neal purchased it, and would be bound to pay these notes; if not, he would not be bound to pay the notes." The court added: "We think the issue above stated should be submitted alone by the court to the jury, together with the question of interest, and nothing else" This course was pursued by the city court at the last trial, and the jury again found in favor of O'Neal. Mrs. Phillips moved for a new trial, and the motion was overruled.

1. These parties were coterminous proprietors, and each acknowledged the ownership of the other, O'Neal by the deed from Love to him which was dated August 20th, 1883, and Mrs. Phillips by her bond for titles to O'Neal which was dated September 21st, 1885. O'Neal's tract as described in the aforesaid deed was bounded "south by Phillips' true line," and the description in the bond for titles from Mrs. Phillips to O'Neal was as follows: "A certain tract or parcel of land on the north side of Pine street and east side of Fort, adjoining the said Hiram O'Neal on the north and N. J. Hammond on the east, being all my interest north of Pine street," and the obligation she assumed in the bond was "to make said O'Neal a title to all of her interest in and to all of her said lot north of Pine, warranting the same against her heirs and assigns." As the limit of O'Neal's tract was Mrs. Phillips' true line, and as Mrs. Phillips recognized that O'Neal's land extended to her line, the location of that line would show the true original boundary between their respective tracts. If that boundary was not north of Pine street, then Mrs. Phillips sold to O'Neal his own land, for she did not intend or undertake to sell anything south of that street, and she expressly declared that what she did sell was all her interest north of it. If she had no interest north

of it, O'Neal acquired nothing by his purchase. There had been no dispute as to the boundary, and consequently no settlement of a dispute was involved in the transaction; there was nothing in the nature of a compromise or the adjustment of a controversy.

2. O'Neal sets up by his plea that he was ignorant of the location of the true line, and that both Mrs. Phillips and her husband, who represented her in the transaction, knew where it was and did not inform him. He insists also, that, if they did not know, this made a case of mutual mistake, and that, as they represented in effect that they did know, he is entitled to relief inasmuch as he really received no consideration. To this it was answered when the case was first here that, as O'Neal acquired possession by reason of his purchase from Mrs. Phillips, he was bound to restore the possession or pay for the land. But that position was distinctly overruled, this court saying: " In a case like the present it is not necessary that the contract should have been rescinded and the property restored to the vendor; neither a court of law or equity could or would, under the facts alleged in these pleas, require a restoration of the property to the plaintiff. That would be to require one to restore to another property which belonged to himself. If A purchase a horse from B, thinking at the time that the horse belongs to B, and give his note for the purchase price, B knowing at the time that the horse belongs to A, the vendee, such note would be without consideration; and inasmuch as the horse had got into the hands to which it belonged, it would be manifestly unjust to require it to be restored to a person to whom it did not belong. So in this case, if the land belonged at the time of the purchase to the purchaser and not to the vendor, and the purchaser believed it belonged to the vendor, and the vendor knew that he had no title to it himself, there could be no sense or justice

in requiring a restoration of possession of the property to the vendor. It would be taking the property that belonged to one man and giving it to another who had no claim to it." Nevertheless, at the last trial the counsel for Mrs. Phillips requested the court to charge the jury thus: " If you believe from the evidence that O'Neal acquired possession of the land under and by virtue of his purchase from Mrs. Phillips, and that he still holds possession of the same and has not been evicted and turned out of possession, you should find for the plaintiff, as it would be inequitable and unjust under such a state of facts for O'Neal to hold on to the property and not pay for it." For three reasons the denial of this request was proper: (1) it was not law in its application to this case; (2) this court had so ruled in 83 *Ga.* 556; (3) it was wholly irrelevant upon the question whether the land of Mrs. Phillips extended north of Pine street, which was the issue on trial if the decision of this court in 85 *Ga.* 142 was of any authority.

3. Another ground of the motion for a new trial complains that O'Neal on cross-examination was not required to answer as to certain transactions involving writings. It is enough to say that the writings or some of them were not produced or accounted for. Moreover, this testimony related to the fact of taking and retaining possession which, as we have seen, was not material.

4. It is not clear to us that the court erred in excluding the evidence of Mulinax as to Crawford Monroe's occupation of a portion of the Brumby tract. And we think the court did not err in denying a new trial on any of the grounds set forth in the motion.

*Judgment affirmed.*