S10A0053, S10A0054. WITCHER v. JSD PROPERTIES, LLC et al.
(two cases).

(690 SE2d 855)

CARLEY, Presiding Justice.

Elnora Maxey became the guardian of Sean Demetri Hall after the death of his parents. Ms. Maxey died in 1996, and her estate consisted of two residential properties. Anthony Cooper petitioned to probate Ms. Maxey's will, and to be appointed executor. The will designated Hall as the sole devisee. Hall's new guardian Julia Annette Jordan filed a caveat objecting to the appointment of Cooper as executor. During a hearing before the probate court, Cooper stated that he would distribute the estate to four alleged children of Ms. Maxey, an altercation ensued, Cooper was removed from the courtroom, and the hearing was continued until a suitable person could be appointed administrator with the will annexed. Ms. Jordan died, and her husband John H. Jordan was appointed Hall's guardian. Several months after he turned 18 years old, Hall died intestate in 1998, and Jordan was appointed administrator of his estate. Over the next several years, the two residential properties remained in Ms. Maxey's estate, but mortgage and tax payments were made by Hall's estate, by Jordan, and by his attorney, Appellant William G. Witcher, Jr.

On April 6, 2007, Cooper entered into an agreement with Quan Smith of Savant Properties and Partners, LLC to sell both properties for $20,000 each. On April 9, Cooper again petitioned the probate court to admit Ms. Maxey's will to probate in solemn form and to be named executor, but he stated that there was no heir to the Maxey estate and failed to serve either Jordan or Appellant. In May, Savant agreed to sell the properties for a total of $190,000 to JSD Properties, LLC. An otherwise clear title report advised JSD to "See Probate on George/Elnora Maxey." On June 5, 2007, the probate court issued letters testamentary to Cooper and entered an order admitting the will to probate in solemn form and authorizing him to disburse all of the estate property according to the terms of the will, which granted the executor power to sell any estate property by public or private sale. Cooper sold the properties to Savant on June 7, and the sale by Savant to JSD closed on June 15.

In his capacity as administrator of the Hall estate, Jordan filed in superior court, with respect to each property, a petition to quiet title and complaint for damages, alleging that Cooper fraudulently obtained the letters testamentary and breached his fiduciary duties, and that Savant, Smith, JSD, and JSD's managing member David Bell aided and abetted that breach when they purchased the property for a fraction of its rightful value. Jordan also filed notices of lis pendens. The probate court removed Jordan as administrator be-

cause of his failing health and appointed Appellant as successor administrator. The superior court granted summary judgment in favor of JSD and Bell (Appellees) on all of the claims against them and cancelled the notices of lis pendens, but did not make any ruling with respect to the remaining defendants. Appellant appeals from that order, contending that the superior court erred in granting summary judgment in favor of Appellees because genuine issues of material fact exist as to whether JSD was a bona fide purchaser for value without notice and as to whether they aided and abetted Cooper, Smith, and Savant in the breach of fiduciary duty.

1. "As to heirs not effectively notified, a proceeding to probate in solemn form shall . . . be as conclusive as if probate had been in common form." OCGA § 53-5-20. Thus, "[b]ona fide purchasers without notice under legally made sales from the executor will be protected." OCGA § 53-5-16 (b). Citing *Pound v. Faulkner*, 193 Ga. 413, 418 (4) (18 SE2d 749) (1942), Appellant argues that Appellees did not meet their burden of proving payment by JSD merely by producing recitations of the alleged consideration. However, Appellees presented other documentation that $190,000 was the actual consideration for the properties, as well as the testimony of Smith that JSD paid that amount. Therefore, "testimony was introduced to prove that the recited consideration was in fact paid," and such consideration was "otherwise proved to have been paid." *Pound v. Faulkner*, supra. "Proof of payment of the purchase money alone raises a presumption of good faith, and carries the burden of claimant. [Cits.]" *Pound v. Faulkner*, supra. See also *Fowler v. Smith*, 230 Ga. App. 817, 821 (3) (498 SE2d 130) (1998).

The undisputed evidence shows that, prior to the sale to JSD, neither Jordan nor Appellant communicated with Appellees, and neither Cooper nor Smith told them that Appellant had a claim to the property. Appellant argues, however, that the title report put Appellees on at least inquiry notice of irregularities in the titles to the properties and in the course of events leading up to the sale by Cooper. In a separate enumeration, Appellant identifies those irregularities as the lack of notice to the Hall estate and the untimeliness of the probate. Although the title report indicated the need to consider the probate estate of Ms. Maxey, Appellees could properly rely on the subsequent order admitting the will to probate and authorizing the sale of estate property by Cooper. "Unless an appeal is taken, the judgment of a probate court either for or against probate is conclusive, and is not subject to collateral attack in any other proceeding in the probate court or in any other court. [Cits.]" 1 Mary F. Radford, *Redfearn Wills & Administration in Ga.*, § 6:15, p. 271 (7th ed. 2008). Likewise, "[a]n order of a probate court granting . . . the authority to sell land of the estate may not be

collaterally attacked if the order is valid on its face. [Cit.]" *Lyday v. Burkes*, 261 Ga. 465, 466 (1) (405 SE2d 472) (1991).

The record here shows without dispute that the probate court's order is valid on its face and that the sale did not violate the terms of the power of sale in the will. Under these circumstances, the sale of real estate " 'to an innocent purchaser, divests the title of the heirs, although there may be irregularities.' [Cits.]" *Lyday v. Burkes*, supra. Where, as here, "the executor, under proper order, sold land of the estate, an heir (though he had no notice of the probate) can not recover the land from one who bona fide and without notice purchased such land at the executor's sale. [Cit.]" *Venable v. Veal*, 112 Ga. 677 (37 SE 887) (1901). "If one with notice sells to one without notice, the latter shall be protected." OCGA § 23-1-19. Indeed, "[f]raud between the executor and his immediate grantee will not affect subsequent purchasers for value who derived title through the deed of the executor bona fide and without any notice of the alleged fraud. [Cit.]" *Wood v. Bowden*, 182 Ga. 329 (4) (185 SE 516) (1936).

2. Appellant further contends that Savant's knowledge, including the interests of other parties and the fair market value of the properties, is imputed to JSD, because Savant was acting as JSD's agent. This contention is based on the fact that, on June 8, 2007, Smith filed an affidavit seeking a dispossessory warrant with respect to one of the properties at issue, showing that he was acting as agent for Bell.

"Notice to the agent of any matter connected with his agency shall be notice to the principal." OCGA § 10-6-58.

> The principal is bound by notice to his agent, for the same reason and to the same extent that he is bound by the act of his agent. In both cases it must be limited to matters within the scope of the agency. . . . [W]hen the agent departs from the scope of the agency, and begins to act for himself and not for the principal; when his private interest is allowed to outweigh his duty as a representative; when to communicate the information would prevent the accomplishment of his fraudulent scheme, he becomes an opposite party, not an agent. The reason for the rule then ceases. Where, therefore, the agent who is an intermediary is guilty of independent fraud for his own benefit, the law does not impute to the principal notice of such fraud. Instead of being communicated, it would be purposely and fraudulently concealed.

*Hodgson v. Hart*, 165 Ga. 882, 887 (142 SE 267) (1928). Thus, assuming that Smith acted as agent for Appellees in filing the

affidavit seeking a dispossessory warrant prior to JSD's purchase of the properties, such evidence does not show that any knowledge by Smith and Savant of Cooper's alleged fraud which they concealed for their own benefit could be imputed to Appellees. For similar reasons, Appellees could not have ratified the alleged tortious conduct of Smith and Savant. "An act can not be subject to ratification unless done in behalf of the person adopting it and attempting to ratify it. [Cit.]" *Lemmons v. City of Decatur*, 215 Ga. 647, 648 (112 SE2d 597) (1960). See also OCGA § 51-1-12.

Appellant also argues that Savant acted as agent for JSD because Savant agreed to sell the properties before it had title and, with JSD's approval and knowledge, Savant obtained the properties for JSD. However, "[t]he authority of an agent in a particular matter can not be established by evidence that he performed acts as agent in that matter." *Kiker v. Anderson*, 226 Ga. 121, 124 (3) (172 SE2d 835) (1970). The fact that Savant and JSD entered into contracts before Savant had title to the properties does not indicate that Savant acted as an agent in obtaining title. To the contrary, Savant is in the same position as any other seller. If a real estate contract is unconditional and the seller " ' "is not able to make delivery by the consummation date, he will be liable in damages for breach of contract." [Cit.]' [Cit.]" *Sackett v. Wilson*, 258 Ga. 612, 614 (2) (373 SE2d 10) (1988). Furthermore, Appellees' knowledge of Savant's want of title is not otherwise relevant to Appellant's claims, "because of our decisions holding that a seller may contract to convey property he does not own." *Sackett v. Wilson*, supra. "[S]uch conduct is not fraudulent in nature." *Williams v. Bell*, 126 Ga. App. 432 (1) (190 SE2d 818) (1972).

3. The sales by Cooper and Savant divested Appellant of title in the properties and are not voidable as to JSD, who is undisputedly an innocent purchaser for value. *Lyday v. Burkes*, supra. Even assuming that genuine issues of material fact remain as to Smith's and Savant's actual knowledge of Cooper's alleged fraud and breach of fiduciary duty, "it is not material to the superiority of [JSD's] title to the propert[ies] in [its] capacity as [a] bona fide purchaser[ ] for value." *Bonner v. Norwest Bank Minnesota*, 275 Ga. 620, 621 (1) (571 SE2d 387) (2002). See also *Anderson v. Streck*, 190 Ga. App. 224, 226 (378 SE2d 526) (1989). Furthermore, because the undisputed evidence shows that Appellees did not take any action purposely and with malice and intent to injure, no genuine issues of material fact remain with respect to Appellant's claim for aiding and abetting a breach of fiduciary duty. *White v. Shamrock Bldg. Systems*, 294 Ga. App. 340, 344-345 (1) (669 SE2d 168) (2008). Accordingly, the superior court correctly granted summary judgment in favor of Appellees.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 15, 2010.

*Joyce, Thrasher, Kaiser & Liss, Ray S. Smith III,* for appellant.
*Carlton Fields, Alison Danaceau, Marvin D. Harris, John J. Maurer, Marcia M. Fuller,* for appellees.